IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICOLE N.-M.,[1]                                        No.  6:22-cv-00010-HZ

                        Plaintiff,                              OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.


Sherwood J. Reese
Luke Moen-Johnson
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, Oregon 97401

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Natalie K. Wight
United States Attorney
Renata Gowie
Civil Division Chief
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Benjamin J. Groebner
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Nicole N.-M. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for SSI on April 5, 2019, alleging an onset date of February 1, 2019. Tr. 105.[2] The onset date was later amended to April 5, 2019. Tr. 111, 123-24. Her application was denied initially and on reconsideration. Tr. 105.

     On January 21, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 105. On March 18, 2021, the ALJ found Plaintiff not disabled. Tr. 102. The Appeals Council denied review. Tr. 1.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9-1.

## FACTUAL BACKGROUND

Plaintiff initially alleged disability based on ovarian cysts and paranoid schizophrenia. Tr. 172. At the time of the alleged onset date, she was 32 years old. Tr. 113. She has completed high school. Tr. 113, 124. She has no past relevant work. Tr. 113, 125.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 107. At step two, the ALJ determined that Plaintiff has the following severe impairments: "schizophrenia; a major depressive disorder; an anxiety disorder; and a seizure disorder." Tr. 107. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 108.

At step four, the ALJ concluded that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:"

> [S]he can never work at unprotected heights, around moving mechanical parts, and never operate a motor vehicle in a work setting. She can perform simple, routine tasks, and make only simple work-related decisions. She can occasionally interact with coworkers, supervisors and the public. The claimant's time off task can be accommodated by normal breaks.

Tr. 110. The ALJ found that Plaintiff had no past relevant work. Tr. 113. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform, such as "Office Cleaner," "Laundry Sorter," and "Office Helper." Tr. 114. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 114.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to give a clear and convincing reason to reject Plaintiff's testimony, (2) failing to provide a legally sufficient reason to discount the assessment of Plaintiff's treating provider, (3) failing to include all assessed functional limitations in the Residual Functional Capacity ("RFC"), and (4) failing to give any reason to discredit lay witness testimony. Pl. Op. Br. 2, ECF 10. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings.

## I.     Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). Factors the ALJ may consider when making such determinations include the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir.

2014). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

Plaintiff held a series of jobs between 2008 and 2018, working as a caregiver and in the cannabis industry. Tr. 318. She stopped working due to chronic pain, ovarian cysts, and paranoid schizophrenia. Tr. 332. She testified that trying to work while managing her medication and appointments was "overwhelming." Tr. 126. She also testified that working was difficult because she generally did not sleep well and did not feel rested. Tr. 126-27.

Plaintiff struggles to sleep due to frequent nightmares. Tr. 333. She has trouble breathing when she wakes up from a nightmare. Tr. 138-39. Plaintiff reported that when she has an episode, she becomes "almost catatonic," barely eats or sleeps, and feels scared. Tr. 337. She reported trouble with memory, concentration, completing tasks, understanding, following instructions, and getting along with others. Tr. 337. She also reported fear of authority figures and "bad social anxiety." Tr. 337. She stated that she cries when she becomes overwhelmed and does not handle change well. Tr. 338. She testified that she will spontaneously cry and shake. Tr. 127. Plaintiff has auditory and visual hallucinations as well as delusions. Tr. 129-30. She attempted suicide in the past. Tr. 332.

Plaintiff testified that she does not live by herself because she could not function all day by herself. Tr. 138. When she is having an episode, Plaintiff needs help with bathing and preparing meals. Tr. 334. She can perform household chores such as cleaning and laundry, but struggles to do so when she is depressed. Tr. 335. She testified that doing chores is "a lot" for her because she is tired most of the time. Tr. 139. She stated in her function report that she shops for groceries and can drive a car, but does not leave the house during an episode. Tr. 335. At the

hearing, she testified that she was not driving anymore and that going to the grocery store was "hard." Tr. 140. Plaintiff can pay her bills but describes the task as "overwhelming." Tr. 336. She stated in her function report that she enjoyed hiking, shopping, learning, studying, and spending time with family and friends. Tr. 336. However, during an episode, she loses interest in all activities. Tr. 336. She stated in her function report that she goes to church and Alcoholics Anonymous meetings but needs to be reminded to attend. Tr. 336. At the hearing, Plaintiff testified that during the pandemic, she did not want to leave the house and tried not to go anywhere beyond nearby stores. Tr. 141. Plaintiff has two children and has lost custody of both of them due to her mental health. Tr 128-29.

The ALJ discounted Plaintiff's testimony based on some inconsistency with the overall medical record and with her activities of daily living. Tr. 110-12.

A.    Activities of Daily Living

The ALJ found that Plaintiff's reported activities of daily living conflict with her allegations of debilitating mental symptoms. Tr. 112. The ALJ found that Plaintiff "indicated that she could perform adequate self-care, care for her daughter, prepare simple meals, drive a car, pay her bills, handle her finances, engage in hobbies, perform household chores, and go grocery-shopping (7E; 1F; 6F)." Tr. 112. The ALJ then stated: "These activities indicate a higher level of function than that alleged by the claimant." Tr. 112.

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to support an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). In

order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722-23. In addition, the claimant's ability to perform limited basic daily activities is not a clear and convincing reason to reject a claimant's testimony. *See id.* at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be utterly incapacitated in order to be disabled.") (internal quotation omitted).

Here, the majority of the activities in which Plaintiff engaged—performing adequate self-care, preparing simple meals, driving a car, paying her bills, handling her finances, performing household chores, and going grocery-shopping—are limited basic daily activities that are legally insufficient to support the ALJ's conclusion. *See Webb*, 433 F.3d at 688. Furthermore, Plaintiff reports struggling to perform these activities, and the ALJ's decision ignores this context. Plaintiff's grandmother reported that "[d]uring extreme episodes [Plaintiff] will not leave house or get in a car." Tr. 312. She also reported that "there are times when [Plaintiff] will not cook at all" and will starve herself during an episode of paranoid schizophrenia. Tr. 312. *See also* Tr. 334. Plaintiff reported that during an episode, she needs reminders to take care of basic hygiene. Tr. 334. She testified that doing chores was "a lot" for her. Tr. 139. She finds grocery shopping "hard" and paying the bills "overwhelming." Tr. 140, 336. She testified at the hearing that she was not driving anymore and needed a ride to the store. Tr. 140. Plaintiff's testimony about her

disabling symptoms does not contradict her other testimony or other evidence in the record about her basic daily activities.

With respect to engaging in hobbies, the ALJ likewise took Plaintiff's testimony out of context. In her function report, dated August 3, 2019, Plaintiff wrote that she enjoyed hiking and shopping but also that "[d]uring my episodes I become almost catatonic. I lose interest in everything." Tr. 336. She stated that the frequency with which she can do these activities "varies tremendously." Tr. 336. Her grandmother wrote in a third party function report dated July 16, 2019, that Plaintiff enjoyed "hiking with a couple of close friends who know and understand her medical & mental health issues." Tr. 314. At the hearing, Plaintiff stated that she was not engaging in these hobbies due in part to the pandemic, which led her to fear leaving the house. Tr. 141.

The ALJ's conclusion that Plaintiff could care for her daughter is not supported by the record. Plaintiff's August 2019 function report states that her daughter T. C. was living with her godmother. Tr. 333. In progress notes after a visit on September 9, 2020, Plaintiff's primary care provider wrote that Plaintiff "comes in today she is very distraught secondary to losing her children, she will not be able to retain custody at all." Tr. 971. At her hearing before the ALJ, Plaintiff testified that she had lost custody of her daughters due to her mental health. Tr. 128-29.

In sum, the ALJ erred in discounting Plaintiff's subjective symptom testimony based on inconsistency with her activities of daily living.

B.      Objective Medical Evidence

The ALJ found that the overall medical record does not support the degree of severity alleged. Tr. 110-12. An ALJ may discount a claimant's testimony based on a lack of support from objective medical evidence, but this may not be the sole reason. *See Burch v. Barnhart*, 400

F.3d 676, 680 (9th Cir. 2005) (holding that "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted); *Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) (stating that "[b]ecause the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

Because the only other reason for which the ALJ discounted Plaintiff's testimony—inconsistency with activities of daily living—was insufficient, the ALJ's reasoning here is insufficient as a matter of law. Moreover, the ALJ provided insufficient reasons to discount Plaintiff's testimony based on inconsistency with objective medical evidence. The ALJ found that "[a] review of the evidence of record shows that she has exhibited the following signs and symptoms: depressed mood, nervousness, anxiousness, irritability, reckless or self-destructive behavior, hyper-vigilance, exaggerated startle response, difficulty concentrating, sleep disturbances, distressing memories and nightmares, flashbacks, triggers, avoidant behaviors, auditory and visual hallucinations, paranoid thoughts, ideas of reference, substance use, and intermittent suicidal thoughts, but no homicidal ideation[.]" Tr. 111. The ALJ also found that "[m]ental status examinations have varied, but generally demonstrated alertness, orientation, a friendly, pleasant, and cooperative demeanor with normal behavior and fair impulse control, appropriate dress and grooming, good hygiene, good eye contact, normal cognition, intact memory, intact attention and concentration, average intellectual functioning, an intact thought

process, normal thought content, but variable mood and affect, as well as variable insight and judgment." Tr. 111.

The ALJ's mere recitation of symptoms followed by a listing of aspects of Plaintiff's demeanor and cognition, without more, is not clear or convincing. The ALJ fails to explain why the findings related to Plaintiff's demeanor and cognition undermine Plaintiff's symptoms. Courts have repeatedly held that displaying normal cognitive functioning or a calm appearance does not undermine a claimant's testimony alleging symptoms such as "anxiety and fatigue, and [] frequent panic attacks." *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-CV-01562-HZ, 2018 WL 5924505, at *5 (D. Or. Nov. 10, 2018) (citing *Ghanim*, 763 F.3d at 1164 (concluding that a therapist's observations of the claimant's cognitive functioning during sessions did not contradict claimant's reported symptoms of depression and social anxiety)). The ALJ's reasoning was legally insufficient.

In sum, the ALJ erred in discounting Plaintiff's subjective symptom testimony by failing to provide a clear and convincing reason to do so.

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ failed to give a legally sufficient reason to discount the Mental Residual Functional Capacity ("MRFC") Assessment of Family Nurse Practitioner ("FNP") Kathryn M. Kernan. Pl. Br. 3. New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the

claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor considers the degree of relevant "objective medical evidence and supporting explanations" relied on by a medical source to support their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor analyzes how consistent the medical opinion is with other medical and non-medical evidence in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On or about November 3, 2020, FNP Kernan performed an MRFC Assessment of Plaintiff. Tr. 649-53. That assessment found moderately severe limitations in four areas: (1) "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," (2) "[t]he ability to make simple work-related decisions," (3) "[t]he ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (4) "[t]he ability to set realistic goals or make plans independently of others." Tr. 650-52. It also found severe limitations in "[t]he ability to interact [with the] general public" and "[t]he ability to travel in unfamiliar places or use public transportation." Tr. 651-52.

The ALJ found this assessment "somewhat persuasive" and "somewhat consistent with the evidence of record," but concluded that it was "a slight overestimate of the claimant's limitations." Tr. 112. The ALJ stated that Plaintiff's limitations "showed only variable mood and affect, as well as variable insight and judgment, but otherwise alertness, orientation, a friendly, pleasant, and cooperative demeanor with normal behavior and fair impulse control, appropriate dress and grooming, good hygiene, good eye contact, normal cognition, intact memory, intact attention and concentration, average intellectual functioning, an intact thought process, normal thought content." Tr. 112-13.

The ALJ was "generally persuaded by the conclusions of the state agency medical and psychological consultants who reviewed the documentary evidence of record in this claim (1A; 3A; 5A; 7A)." Tr. 112. He stated that their conclusions "are generally consistent with the overall evidence of record, which showed alertness, orientation, a friendly, pleasant, and cooperative demeanor with normal behavior and fair impulse control, appropriate dress and grooming, good hygiene, good eye contact, normal cognition, intact memory, intact attention and concentration, average intellectual functioning, an intact thought process, normal thought content." Tr. 112.

The ALJ erred here for reasons similar to the reasons he erred in discounting Plaintiff's subjective symptom testimony based on inconsistency with the objective medical record. The ALJ found that Plaintiff "has exhibited the following signs and symptoms: depressed mood,

nervousness, anxiousness, irritability, reckless or self-destructive behavior, hyper-vigilance,
exaggerated startle response, difficulty concentrating, sleep disturbances, distressing memories
and nightmares, flashbacks, triggers, avoidant behaviors, auditory and visual hallucinations,
paranoid thoughts, ideas of reference, substance use, and intermittent suicidal thoughts, but no
homicidal ideation." Tr. 111. The ALJ failed to provide a legally sufficient reason that these
symptoms were inconsistent with FNP Kernan's assessment. Plaintiff's pleasant demeanor and
normal cognition at some appointments, in light of her other symptoms, is not facially
inconsistent with FNP Kernan's assessment, so the ALJ was required to explain his reasoning.
*See Mal Im K. v. Comm'r of Soc. Sec.*, No. 3:20-CV-05743-BAT, 2021 WL 252237, at \*3 (W.D.
Wash. Jan. 26, 2021). The ALJ's analysis of FNP Kernan's assessment was legally insufficient.

## III.    Residual Functional Capacity

Plaintiff argues that the ALJ erred in failing to include in the RFC all functional
limitations assessed by the state agency reviewing psychologist, Dr. Kaper, Ph.D. Pl. Br. 9. The
RFC is the most a person can do, despite her physical or mental impairments. 20 C.F.R. §
404.1545(a). In formulating an RFC, the ALJ must consider all medically determinable
impairments, including those that are not "severe," and evaluate "all of the relevant medical and
other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL
374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the
medical testimony and translating the claimant's impairments into concrete functional limitations
in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations
supported by substantial evidence must be incorporated into the RFC and, by extension, the
dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65

(9th Cir. 2001). An "RFC that fails to take into account a claimant's limitations is defective."

*Valentine*, 574 F.3d at 690.

The ALJ was "generally persuaded" by the conclusions of Dr. Kaper. Tr. 112. Dr. Kaper

found Plaintiff "[m]oderately limited" in "[t]he ability to get along with coworkers or peers

without distracting them or exhibiting behavioral extremes." Tr. 180. Based on this finding, he

concluded that "Clmt should not closely engage incidental public on frequent basis And

incidental interaction w /coworkers should be brief & structured." Tr. 181. The ALJ's RFC

stated in full that Plaintiff:

> can never work at unprotected heights, around moving mechanical parts, and never
> operate a motor vehicle in a work setting. She can perform simple, routine tasks,
> and make only simple work-related decisions. She can occasionally interact with
> coworkers, supervisors and the public. The claimant's time off task can be
> accommodated by normal breaks.

Tr. 110. It did not mention the need for interactions with coworkers to be "brief & structured."

Tr. 181. Thus, the RFC was defective. *Valentine*, 574 F.3d at 690.

Defendant argues that any error was harmless because it does not preclude two of the

three jobs the ALJ found Plaintiff could perform—Office Cleaner and Laundry Sorter—because

they require no significant taking of instructions or helping. Def. Br. 9-10, ECF 11 (citing U.S.

Dep't of Labor, *Dictionary of Occupational Titles* (DOT) 323.687-014, *available at* 1991 WL

672783 (office cleaner) ("People: 8 – Taking Instructions-Helping N– Not Significant"); DOT

361.687-014, *available at* 1991 WL 672991 (laundry sorter) (same)). But it is unclear from this

description whether an individual who is only allowed "brief and structured" interactions with

coworkers could engage in either job. Defendant's counsel is essentially making a vocational

assessment without the help of a vocational expert, which is not appropriate here. *See Johnson v.*

*Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) ("If the limitations are non-exertional and not

covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given her limitations."); *Hoopai v. Astrue*, 499 F.3d 1071, 1075-76 (9th Cir. 2007) (same). A remand for further proceedings on this issue is required.

## IV.    Lay Witness Testimony

Plaintiff asserts that the ALJ failed to give any reason to discredit lay witness testimony. Pl. Br. 18. "Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). However, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

Plaintiff submitted several third-party statements: a function report by Plaintiff's grandmother, Sandra M., Tr. 310-317; a letter of information from Ms. M., Tr. 368; and a letter from a friend, Paul M. Hartzo, Tr. 369. The ALJ addressed these statements as follows: "The record includes multiple third party statements (5E; 14E; 15E). The undersigned has considered these supportive statements and observations regarding the claimant's impairments and associated decreased work capacity when determining the above residual functional capacity." Tr. 113. The ALJ said nothing further about the statements in making his final determination about Plaintiff's capacity. Tr. 113. Plaintiff is correct that the ALJ gave no reasons to discount the testimony.

Defendant asserts that under the revised regulations, the ALJ need not provide reasons to discredit or reject statements, and in the alternative that any error is harmless. Def. Br. 6. The Court rejects Defendant's first contention. The language of 20 C.F.R. § 404.1520c(d) and 20 C.F.R. § 416.920c(d) provides that the agency need not use the criteria outlined for evaluation of medical sources when evaluating nonmedical sources, not that the agency need not articulate its reasoning at all when evaluating nonmedical sources. Thus, the new regulations do not displace existing caselaw in this area.

Defendant then argues that any error is harmless because the statements do not describe any limitation not described by Plaintiff, so the ALJ's reasoning with respect to Plaintiff's testimony also applies to the third-party statements. Def. Br. 6. Defendant's second contention also fails. The parties agree that Plaintiff's grandmother "describe[d] significant mental health symptoms." Def. Br. 6; *see also* Pl. Br. 18-19. They also agree that Plaintiff's grandmother corroborated Plaintiff's account. Def. Br. 6; *see also* Pl. Br. 18-19. As discussed above, the ALJ's discounting of Plaintiff's testimony was erroneous. *Supra* at 8-12. Therefore, it provides

no well-supported reasons to sustain the ALJ's evaluation of the lay witness statements. The ALJ's error was not harmless.

## V.    Remand

Plaintiff asks the Court to credit the above-described testimony as true and remand this case for payment of benefits. Pl. Br. 19. To determine whether it is appropriate to remand for payment of benefits or for further proceedings, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The ALJ failed to articulate legally sufficient reasons for discounting the medical opinion of FNP Kernan as well as Plaintiff's testimony and nonmedical third-party statements. The ALJ also failed to include all functional limitations in the RFC. The Court finds that further proceedings, rather than a remand for benefits, would be useful. The record is not "free of conflicts, ambiguities, or gaps." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017). Exercising its discretion, the Court finds it is appropriate to remand this case for further proceedings so that the ALJ may properly consider and evaluate the evidence.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for further proceedings.

IT IS SO ORDERED.


DATED: December 31, 2022     .


_____
MARCO A. HERNÁNDEZ
United States District Judge